M. B. Grace et al. v. C. R. Miller.

No. 272.

1. Fact Case—Vendor's Lien.—See facts where an assignee of a vend-- or's lien note before maturity was held to be entitled to a decree of foreclosure, although the vendor and vendee had by parol agreement rescinded the sale; and further agreed that the note sued on should be held as an obligation for rent.

2. Practice in Appellate Court when Judgment is Affirmed.— When the facts found by the court below and his rulings on the law of the case are not in the record, if from the evidence in the record facts can be found which will sustain the judgment, it must be affirmed; and all conflicts in the evidence· must be determined, so far as necessary, in favor of that view which tends to support the judgment.

3. Reinstatement of a Sale of Land. — If the parties had previously agreed upon the rescission of the contract of the purchase and sale of the land, it was still in their power to reinstate it, and to confer upon a purchaser of the note all the rights which accompanied the note as an obligation for purchase money.

Appeal from Polk.   Tried below before Hon. L. B. Hightower.

*James E. Hill*, for appellants.—1. At the time the judgment was ren-- dered in the District Court in this case, no vendor's lien existed against the land described in the judgment, to secure the payment of the note sued on in favor of appellee.

2. The lien on the land was extinguished when Grace elected to rescind the contract of sale and pay the note sued on as rent.

3. The endorsement of the note by Miller was a contract of guaranty;. the cotton paid the note and extinguished the lien, whether vendor's or landlord's.   Cook v. Southwick, 9 Texas, 615; Latham v. Flour Mills, 68 Texas, 130; 3 Myers' Fed. Dec., 610, sec. 547; Good v. Martin, 5 Otto, 90; Chandler v. Westfall, 30 Texas, 475.

*J. M. Crapon* and *Holshousen & Feagin*, for appellee.

WILLIAMS, Associate Justice.— During the fall of 1888, M. B.. Grace, who was occupying a farm in Polk County, gave to appellee, Miller, a mortgage on all crops which Grace should produce " to the ex-- tent of three bales" during the year 1889, to secure a debt then due and such other sum as might become due thereafter for supplies, etc., furnished Grace by Miller.   Grace did not own the land, but on the 28th day of May, 1889, joined by his wife, E. J. Grace, concluded a written contract with appellant Holliman, by which he agreed to purchase from Holliman a two-thirds interest in the land and certain personal property, for a con- sideration of $800, for which he gave the three joint notes of himself and.

his wife, the first for $200, payable on the 1st day of December, 1889, and the other two for $300 each, payable at subsequent dates; and gave to Holliman a mortgage on all crops to be grown by Grace upon the premises during the years 1890, 1891, and 1892 to secure such notes. It was also stipulated, that the title to all the property should remain in Holliman until the notes were paid, and upon such payment Holliman bound himself to convey the property to Mrs. Grace. At the time the written contract was made there was a verbal understanding between the parties that Grace might during the year 1889 elect not to purchase the land, in which event the note for $200 was to be considered and treated as an obligation for the rent of that year. Early in the fall of the same year Grace decided that he would not consummate the purchase, and so told the agent of Holliman, who held the notes for collection. This was communicated to Holliman and was satisfactory to him, and the contract of purchase and sale was considered by all of the parties as rescinded, and the $200 was held for collection as rent by Holliman's agent. After this, and in October, Grace notified Oates, the agent of Holliman, that he had brought to market three bales of .cotton. Miller desired to ship the cotton in order to obtain good prices, and a conversation ensued between him and Oates, in which the latter claimed the right to hold the cotton until the note for $200 was paid, but expressed to Miller a willingness to let the latter ship the cotton, if he could " get him (Miller) where he could make him pay the note." Miller asked Oates if he, Miller, would endorse the note if that would not make it good, to which Oates assented, and Miller accordingly wrote his name across the back of the note, and thereupon was allowed by Oates to take the cotton.

Before endorsing the paper Miller inquired of Oates if his endorsement would put him in the place of Holliman, to which Oates replied that it would. Miller told Oates that he was willing to endorse the note if he could control the cotton, and after he had endorsed it promised that he would pay it as soon as he had gotten enough cotton from Grace, and would notify Oates when the remainder of the cotton was brought in. Miller was to have the cotton gathered, which he did, and later, about November 1, notified Oates that the rest of the cotton was ready.

Oates went with the note to Miller's store, and a transaction occurred, about the most of which the witnesses agree in their statements, though upon one or two points there is a material conflict. Miller stated to Oates, that as the note was not due for thirty days, if it suited Oates he, Miller, would prefer not to pay it then, as he needed the money. Oates replied, that as he was acting for another he would prefer that the note be paid. Miller then proposed, according to Oates' testimony, that if Oates would transfer to him, Miller, the note, together with all the liens on the land and stock, that he would give a check for the amount of the note. Miller's statement of his proposition is substantially the same as

Oates', except that he says his proposition was that Oates should trans- fer the vendor's lien on the land and the lien on the stock. To the propo-. sition of Miller, Oates agreed, the check was given and accepted, and the following transfer was written upon the note by Miller, which Oates signed:

" This note is this day transferred to C. R. Miller, with all claims or vendor's lien on land and stock, as per contract or deed from J. H. Hol- liman to M. B. Grace, as far as this note goes as payment on said land and stock.

[Signed]                          "J. H. Holliman,
                                  " Per Oscar E. Oates."

Grace was present at and assented to the transaction between Oates and Miller. Miller subsequently credited Grace upon his account with the proceeds of the cotton, and there being a balance, it was endorsed as a credit on the note. This was all done with Grace's knowledge and con- sent.

There is a conflict of testimony as to whether or not Miller, at the time he obtained the note, had notice of the fact that the contract of sale be- tween Holliman and Grace had been rescinded and the note converted into an obligation for rent. Oates states positively that he informed him fully of the fact. Holliman also states that he communicated the knowl- edge to Miller, but does not give the time when he did so. Further on he says Miller knew all about the fact, but does not state how he knows. He was not present at either of the interviews between Oates and Miller. Miller denies that he had any such knowledge, stating that he never heard of any verbal agreement that the contract could be rescinded, nor of the rescission, until after his transaction with Oates, and that it was after that time that Holliman made the statement to him; that he does not re- member that Oates ever told him of the cancellation and that the note was for rent; would not say positively that he did not, but did not re- member that he did; that he knew that he did not have notice from any source at the time he bought the note.

There is no denial of Oates' authority to make the agreement claimed by Miller, and to transfer the note.

There are other circumstances relied on by the parties, tending more or less to sustain their respective versions of the dealings above set forth, but enough has been stated to develop the nature of the issues upon which the decision must turn.

The defendant, Garvey, bought the land from Holliman after all of the facts stated had transpired, and no facts are shown to put him in any other or better attitude with reference to them than Holliman himself would occupy.

This suit was brought by Miller to recover of Grace and wife as makers, and of Holliman as endorser or assignor, the amount due on the note, and to foreclose against them and Grace the vendor's lien on the land.

Judgment was rendered against M. B. Grace alone for the amount of the note, discharging Mrs. Grace and Holliman from personal liability, and foreclosing against all of the parties a lien on the land and decreeing its sale to pay the sum adjudged. The judgment orders the residue, if any, after payment of the debt, to be paid to defendants.

There is no statement in the record of the facts found by the court below, nor of his rulings upon the law of the case. If, therefore, from the evidence in the record, facts can be found which will sustain the judgment, it must be affirmed, and all conflicts in the evidence must be determined, so far as necessary, in favor of that view which tends to support the judgment. We must therefore conclude, in addition to the undisputed facts stated, that in the second transaction between Oates and Miller, the latter without notice of any verbal agreement between Holliman and Grace, giving Grace the privilege of rescinding the contract, and without notice of any actual rescission, proposed to Oates to pay the note before its maturity, and before he was bound to pay it, if Oates would transfer the note, with the vendor's and other liens, to Miller; and that Oates accepted this proposition and made the transfer on the note, without notifying Miller of any change in the contract of Grace; and that Miller gave the check as the consideration of such transfer, and that this was all done with the knowledge and consent of Grace. Holliman and Grace were the parties interested in freeing the land from the vendor's lien, and when they both assented to a transfer of the note to Miller, not only with the assumption, but upon the express stipulation, that it represented part of the purchase money of the land, and was secured by a vendor's lien, and obtained from Miller money which he was not then bound to pay, it would seem that they ought to be precluded from afterwards denying the existence of such lien.

If they had previously agreed upon the rescission of the contract of the purchase and sale, it was still within their power to reinstate it, and to confer upon a purchaser of the note all the rights which accompanied the note as an obligation for purchase money.

That Miller was already bound to pay the note is no answer to this view of the transaction. He was not bound to pay it then, nor, perhaps, at all until after default on Grace's part. It is true that he promised Oates to pay it as soon as enough cotton was in hand, but this seems to have been volunteered by him after he had endorsed the note. His legal obligation was expressed by the note and his endorsement, and was not then mature. Nor is it an answer that he received cotton which had been charged with a lien to secure the payment of the note. The very object of the endorsement was to release the cotton from such lien in or-

der that he might control it; at least the facts warrant that construction. Besides, treating the second transaction as a purchase by Miller of the note, Grace being the debtor, with his cotton subject to two liens, one to secure the note if that was still in force, and one to secure Miller's account, he had the right to apply the payments on either, and, as is shown, he consented to the application of them to the account.

If hardship results to Holliman in depriving him of his right to sell the land, or in burdening it with a note of which payment should have been exacted, instead of a transfer of it to another person, it flows from the contract made by himself through his authorized agent. Had he simply enforced his rights under his original contract, or under that made with Miller when the latter endorsed the note and became liable for it, the note would have been paid and the lien discharged. But in the second agreement between Oates and Miller new rights and changed relations resulted; at least the court below could have legitimately so found from the evidence, and we can only recognize them as they exist. The facts may have authorized a different judgment, but we think they sustain also the view we have expressed, under which the judgment must be affirmed.

There was no effort made in the lower court to alter the form of the judgment wherein it directs that any residue of the proceeds of sale, after paying the debt and costs, be paid over to defendants. There was no issue on that point between defendants, and the judgment will not prevent the party entitled to such residue from receiving it.

*Affirmed.*